1

2

3

4

5          IN THE UNITED STATES DISTRICT COURT

6          FOR THE NORTHERN DISTRICT OF CALIFORNIA

7

8   JENSEN ENTERPRISES INC.,                    No. C 06-00247 SI

9            Plaintiff,                         **ORDER GRANTING DEFENDANTS'**
                                                **MOTION TO DISMISS IN PART AND**
10     v.                                       **DENYING MOTION IN PART**

11   OLDCASTLE, INC.; PACIFIC BELL
     TELEPHONE COMPANY; SBC SERVICES,
12   INC.; and NEVADA BELL
     TELEPHONE COMPANY,
13
              Defendants.
14   _____/

15

16          On July 21, 2006, the Court heard argument on defendants' motion to dismiss plaintiff's second

17   amended complaint. Having considered the arguments of counsel and the papers submitted, and for

     good cause appearing, the Court hereby GRANTS defendants' motion in part and DENIES defendants'
18
     motion in part.
19

20
                                          **BACKGROUND**
21
     **A.      Telephone Vault Market**
22
            Plaintiff Jensen Enterprises Inc. ("Jensen") manufactures and sells pre-cast concrete vaults that
23
     are used by telephone companies to connect newly constructed homes and businesses to the existing
24
     land-line telephone network. The vaults are underground rooms that contain telephone equipment and
25
     wiring and serve as modern replacements for traditional telephone poles. According to Jensen, these
26
     vaults are an "indispensable part of the modern-day telecommunications infrastructure." Second
27
     Amended Complaint ("SAC"), ¶ 45. Defendant Oldcastle, Inc. ("Oldcastle") also manufactures the
28

vaults and is a direct competitor of Jensen.  Defendants Pacific Bell, Nevada Bell and SBC Services (collectively referred to as "AT&T")[1] are allegedly the sole providers of land-line telephone service in most of California and Nevada. SAC ¶ 11.    According to the SAC, the market for telephone vaults in California and Nevada works in the following way.  When a new property is constructed, the vaults are purchased and installed either by the property developer or, on infrequent occasions, by AT&T itself. SAC, ¶ 17.  When a developer performs the installation, the developer is typically required to resell the installed vault to AT&T before AT&T will provide land-line telephone service to the property.  *Id.*  As a result of this requirement, AT&T is the ultimate purchaser of most telephone vaults sold in Nevada and California.

For many years, Jensen sold vaults to AT&T in California and Nevada, primarily through developers but also through direct sales.  SAC, ¶ 54.  In 2000, AT&T allegedly offered Jensen a new contract covering direct sales. SAC, ¶ 56. Jensen alleges that the proposed contract contained "onerous, one-sided provisions" that Jensen could not reasonably accept given prevailing market conditions.  *Id.* In particular, the contract purportedly required Jensen to offer blanket indemnities to AT&T and to make direct sales to AT&T at unreasonably low prices.  *Id.*  Although Jensen rejected the offer, a similar offer was allegedly accepted by Oldcastle.  SAC, ¶58.

Jensen further alleges that, following the formation of the AT&T/Oldcastle agreement (which covered only direct sales), AT&T announced that Oldcastle was the sole approved vendor of telephone vaults in California and that it would only accept vaults installed by developers who used Oldcastle. SAC, ¶ 59.  Following the filing of this lawsuit, AT&T purportedly announced a similar policy for developer-installed telephone vaults in Nevada.  SAC, ¶ 60.

According to Jensen, AT&T's new policies have had several deleterious effects on the market for developer-installed telephone vaults in California.  Because Oldcastle is now AT&T's sole authorized supplier of vaults and because AT&T is the sole provider of land-line telephone services, Oldcastle has allegedly been able to raise the prices it charges developers to above-market rates. SAC, ¶ 62.  Moreover, AT&T has lowered its developer reimbursement rates to the price levels listed in its

[1]As a result of various mergers, all three defendants are now affiliates of AT&T.

United States District Court

For the Northern District of California

direct sales agreement with Oldcastle.[2] *Id.* Thus, AT&T allegedly receives both indemnification from Oldcastle as well as below-market prices from developers, while Oldcastle can charge developers "excessively high prices" that more than cover the cost of indemnification. *Id.*, ¶ 65. The property developers are, of course, the ones who bear the cost of this new arrangement. *Id.* Jensen asserts that developers pass these costs on to real estate purchasers, thereby raising real estate prices in California. *Id.*, ¶ 71. In addition, Jensen and Oldcastle's other competitors in California have allegedly suffered significant financial losses as a result of AT&T's new exclusionary policies. *Id.*, ¶¶ 61, 73. Although too early to tell, Jensen expects that the Nevada market will be similarly affected, particularly because Oldcastle does not maintain manufacturing facilities in Nevada (Jensen does) and will therefore be required to incur the purportedly significant expense of shipping its products to Nevada from northern California. SAC, ¶ 62.

**B.    Electrical Vault Market**

Jensen and Oldcastle also produce precast concrete vaults for electric utilities. Jensen alleges that Oldcastle has been using the excess profits generated from its arrangement with AT&T in order to significantly lower its prices on electrical vaults in northern California. SAC, ¶ 63. Because it is convenient for developers to choose the same supplier for both telephone and electric vaults, Oldcastle's alleged predatory pricing, combined with its purported monopoly of the telephone vault market, allegedly threatens the market for electrical vaults. SAC, ¶ 108.

**C.    This Lawsuit**

In January 2006, Jensen initiated this lawsuit against Oldcastle and AT&T. In May 2006, Jensen filed a second amended complaint which listed 17 causes of action against the defendants. These claims allege violations of Sections 1 and 2 of the Sherman Antitrust Act (Claims 1-8, 15, 16), violations of California's Cartwright Antitrust Act (Claim 10), violations of Nevada's Unfair Trade Practice Act

---

[2]Plaintiff alleges that the lowering of reimbursement rates was the sole purpose of the AT&T/Oldcastle direct sales contract. According to plaintiff, Oldcastle has made few, if any, direct sales to AT&T under the contract. SAC, ¶ 64.

(Claim 17), violations of California's Business & Professions Code Section 17200 et seq. (Claim 11), tortious interference with contract (Claim 12), tortious interference with prospective business opportunity (Claim 13) and commercial defamation (Claim 14). Defendants have filed a 12(b)(6) motion to dismiss 16 of the 17 claims in the second amended complaint on the grounds that Jensen fails to properly allege facts sufficient to establish one or more elements of each cause of action.[3]

**LEGAL STANDARD**

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. The question presented by a motion to dismiss is not whether the plaintiff will prevail in the action, but whether the plaintiff is entitled to offer evidence in support of the claim. *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *overruled on other grounds by Davis v. Scherer*, 468 U.S. 183, 104 S. Ct. 3012 (1984).

In answering this question, the Court must assume that the plaintiff's allegations are true and must draw all reasonable inferences in the plaintiff's favor. *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). Even if the face of the pleadings suggests that the chance of recovery is remote, the Court must allow the plaintiff to develop the case at this stage of the proceedings. *See United States v. City of Redwood City*, 640 F.2d 963, 966 (9th Cir. 1981).

**DISCUSSION**

**A.    Sherman Antitrust Claims**

**1.    Relevant Market & Antitrust Injury**

A plaintiff in an antitrust action must properly allege both a "relevant market" and an antitrust injury. *See Tanaka v. Univ. of S. Cal.*, 252 F.3d 1059, 1063 (9th Cir. 2001) ("Failure to identify a relevant market is a proper ground for dismissing a Sherman Act claim.") (citing *Big Bear Lodging Ass'n v. Snow Summit, Inc.*, 182 F.3d 1096, 1105 (9th Cir. 1999)); *see also McGlinchy v. Shell Chem.*

---

[3]Defendants Oldcastle and AT&T filed separate motions to dismiss. However, defendants' arguments and related case support overlap significantly. The major exceptions are those claims, such as claims 8 and 9, that apply to only one party.

United States District Court

For the Northern District of California

*Co.*, 845 F.2d 802, 811 ("To state an antitrust claim [under Section 1 or Section 2] . . . appellants must allege antitrust injury.") (citing *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.,* 429 U.S. 477, 489 (1977)). Defendants argue that all of Jensen's antitrust claims should be dismissed because Jensen has failed to allege either of these required elements.

While the Court acknowledges that a significant factual dispute exists as to the nature and functioning of the telephone vault market, the Court must, for the purposes of this motion, accept the facts alleged in the plaintiff's complaint as true. As a result, the Court concludes that plaintiff has adequately alleged both a relevant market and an antitrust injury.[4] With respect to the market, the SAC alleges that the relevant market is sales of telephone vaults *to property developers and contractors* in Nevada and California who wish to connect to the AT&T wireline network. SAC, ¶ 49. Jensen further alleges that Oldcastle, Jensen and others, including Teichert, Inc., actively compete with one another for these sales to developers. *Id.*, ¶ 61.

Defendants argue that the telephone vault market is actually a single-purchaser market and is therefore insufficient as the basis of an antitrust claim. Defendants base their argument on the fact that, as acknowledged in the SAC, AT&T is the ultimate purchaser of most telephone vaults in California and Nevada. Defendants also characterize the relationship between AT&T and Oldcastle as an exclusive supplier arrangement. Such arrangements are not typically subject to antitrust actions. *See NYNEX Corp. v. Discon, Inc.,* 525 U.S. 128, 137 (1998). Lastly, defendants argue that the "area of effective competition" between Oldcastle, Jensen and others was for the exclusive contract with AT&T, not for sales to developers.

Although defendants' characterization of the market and the relationship between AT&T and Oldcastle may ultimately be proved true as a matter of fact, the SAC nonetheless properly alleges the elements of a relevant market: a specific product (telephone vaults), multiple purchasers (property developers and contractors) and an appropriate geographic region (properties seeking connections to the AT&T network in California and Nevada). SAC, ¶ 49; *see Tanaka*, 252 F.3d at 1063. This same

---

[4]Defendants' opposition to Jensen's seventh claim, "Conspiracy to Monopolize," is based solely on Jensen's failure to allege either a relevant market or antitrust injury. Because the Court concludes that Jensen has properly pled both a relevant market and antitrust injury, Jensen's seventh claim is not subject to dismissal.

United States District Court

For the Northern District of California

reasoning applies to defendants' argument that Jensen defines the market too narrowly by failing to include both sales of other types of vaults and sales of telephone vaults to other telecommunications companies. Although AT&T and Oldcastle may be able to demonstrate that a broader market definition is appropriate, the facts alleged in the complaint do not compel such a conclusion.

Defendants also argue that Jensen has improperly pled antitrust injury by failing to allege both direct harm to itself and injury to market competition in general. *See McGlinchy*, 845 F.2d 802 at 811-13 ("[F]ailure to allege injury to competition is a proper ground for dismissal by judgment on the pleadings") (citing *Seattle Totems Hockey Club v. National Hockey League*, 783 F.2d 1347, 1350 (9th Cir. 1986)). The Court disagrees.

Jensen alleges at several points in its SAC that it has been directly and proximately harmed by the defendants' conduct. See, e.g., SAC, ¶¶ 73, 40, 55, 78, 82, 87. This purported harm includes the loss of several million dollars in profits. SAC, ¶ 73. Jensen also alleges that it is both a competitor of defendant Oldcastle and a target of AT&T and Oldcastle's alleged antitrust activity. SAC, ¶¶ 52, 60, 70. Therefore, the Court concludes that Jensen has alleged facts sufficient to establish direct harm. *See Amarel v. Connell*, 102 F.3d 1494, 1510 (9th Cir. 1996) ("Although a plaintiff normally lacks standing where the plaintiff's customer is the immediate victim of the defendant's conduct, standing is appropriate where that plaintiff also competes with the defendant.") (citing *Associated Gen. Contractors of Cal., Inc. v. Carpenters*, 459 U.S. 519, 542-544 (1983)).

In addition, plaintiff has sufficiently alleged harm to competition. Defendants argue that the pertinent competition was for the exclusive AT&T contract, not for vault sales to developers, and that Jensen has not alleged injury to this competition. Defendants' argument is unpersuasive because it again attempts to redefine the relevant market rather than recognizing the market as defined in the SAC. Accepting the SAC's definition of the relevant market, the Court concludes that Jensen has adequately pled injury to competition. Jensen alleges that competition in the market for telephone vault sales to developers has been eliminated, that customers (i.e., the property developers) are now required to pay "excessively high prices" and are forced to take a loss on vault purchases and that the market has been "radically transform[ed]" to the detriment of all but the defendants. SAC, ¶¶ 29, 31, 32, 59, 20.

**2.      Sherman Act Section 1 Claims**[5]

The Court finds that Jensen has successfully pled at least one Section 1 claim.[6]  However, the Court strongly suggests that Jensen consolidate its remaining Section 1 claims into as few claims as possible.  In particular, in its next amended complaint, plaintiff should avoid claims that simply recharacterize or re-label other claims.

**a.      Claims 1 & 4:  "Improper Exclusive Distributorship" & "Misuse of Essential Facility"**

Plaintiff's first and fourth claims are general rule-of-reason claims that do not allege traditional antitrust restraints, such as refusals-to-deal or tie-in arrangements.   Since a rule-of-reason theory requires that the fact-finder "decide whether under all circumstances of the case the restrictive practice imposes an unreasonable restraint on competition," any agreement or combination that restrains trade might qualify as a Section 1 violation. *See McGlinchy*, 845 F.2d at 811 (citations and internal quotations omitted).  Defendants object to these claims largely on the grounds that the labels chosen by plaintiff do not conform to the alleged facts.

While the Court agrees that the labels could be more accurate, a rule-of-reason claim does not require specific categorizations.  *See Kaplan v. Burroughs Corp.*, 611 F.2d 286, 290-91 (9th Cir. 1979). Therefore, plaintiff's first and fourth claims are not subject to dismissal.  However, the Court reiterates its suggestion that plaintiff consolidate overlapping claims into a single claim.

**b.      Claim 2:  "Improper Refusal to Deal"**

The Court concludes that Jensen's concerted refusal-to-deal to deal claim is subject to dismissal with leave to amend.  Jensen alleges that the agreement between AT&T and Oldcastle represents a

---

[5]Section 1 of the Sherman Antitrust Act reads: "Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal."  15 U.S.C.A. § 1.

[6]A Section 1 claim requires a plaintiff to establish the following: "(1) that there was a contract, combination or conspiracy; (2) that the agreement unreasonably restrained trade under either a per se rule of illegality or a rule of reason analysis; and (3) that the restraint affected interstate commerce." *Tanaka*, 252 F.3d at 1062.

United States District Court

For the Northern District of California

concerted refusal to deal with Jensen and that the defendants have made it impractical for developers to purchase from Jensen.  However, Jensen fails to allege that Oldcastle has either refused to deal with Jensen directly or has refused to deal with developers who buy products from Jensen.  Such allegations are required in a concerted refusal-to-deal claim.  *See Seagood Trading Corp. v. Jerrico, Inc.*, 924 F.2d 1555, 1568 (11th Cir. 1991) (noting that a concerted refusal to deal "describes a situation where two or more parties have agreed that *each of them* will refuse to deal with a particular customer or customers") (citations omitted)(emphasis added).  Since Jensen's SAC contains no allegations that Oldcastle has refused to deal with Jensen or its customers, the Court dismisses this claim with leave to amend.

### c.      Claim 3:  "Price Manipulation"

The Court dismisses the plaintiff's third claim, entitled "Price Manipulation," without leave to amend.  Plaintiff concedes that this claim is simply an "alternate characterization" of the other antitrust claims.  Defendants argue, and the Court agrees, that Jensen does not have standing to sue for "price manipulation" because Jensen does not allege any direct harm resulting from such price manipulation alone.  *See Associated General Contractors*, 459 U.S. at 540-41.   Even if true, Jensen's allegations would provide only the property developers, who are the ones directly harmed by changes in market prices, with standing.  See SAC,  ¶¶ 80-83.

### d.      Claim 5:  "Tie-in Arrangement"

The Court dismisses Jensen's fifth claim, a per se improper tying arrangement, without leave to amend.  "A tying arrangement is an agreement by a party to sell one product [(the tying product)] but only on the condition that the buyer also purchases a different (or tied) product."  *Eastman Kodak Co. v. Image Technical Servs., Inc.*, 504 U.S. 451, 461-62 (1992) (citing *Jefferson Parish Hosp. Dist. No.2 v. Hyde*, 466 U.S. 2, 21-22 (1984).  In order to establish an improper tying arrangement, the plaintiff must demonstrate that the two products in question exist in separate product markets with independent

demand curves.[7]  *Id.*

In the present case, Jensen not only fails to allege two independent product markets, but actually alleges the opposite.  In its SAC, Jensen contends that AT&T requires property developers to purchase Oldcastle telephone vaults (the tied product) in order to receive access to its land-line telephone network (the tying product).  However, Jensen defines the relevant market as the sale of telephone vaults to property developers who wish to connect to the AT&T wireline network.  SAC, ¶ 49.  Jensen then alleges that property developers "must" install telephone vaults in order to connect to the AT&T network. SAC, ¶ 14. Therefore, according to the face of plaintiff's second amended complaint, a property developer in the market for a connection to AT&T's wireline network must, by definition, be in the market for telephone vaults.  Separate product markets do not exist for telephone vaults and connections to the AT&T network among property developers.  Therefore, AT&T's arrangement with Oldcastle, as alleged in the SAC, cannot as a matter of law be described as a per se tying arrangement.

### 3.  Sherman Act Section 2 Claims[8]

#### a.  Claim 6: "Monopolization"

Jensen has alleged monopolization claims against both AT&T and Oldcastle.  A Section 2 monopolization claim requires a plaintiff to demonstrate each of the following: (1) possession of monopoly power by the defendant in a relevant market, (2) willful acquisition or maintenance of that power that is not the result of the growth of a superior product or historical accident, and (3) causal antitrust injury.  *See U.S. v. Grinnell Corp.*, 384 U.S. 563, 570-71 (1966); *SmileCare Dental Group v. Delta Dental Plan of California, Inc.*, 88 F.3d 780, 783 (9th Cir. 1992) (including "causal anti-trust injury" element).

Jensen has pled facts sufficient to establish each of the above elements with respect to Oldcastle.

---

[7]Separate product markets (and hence tying arrangements) can exist even if one product is useless without the other.  For example, separate markets for cameras and film exist even though film is useless without a camera.  *See Eastman Kodak*, 504 U.S. at 463.

[8]Section 2 reads: "Every person who shall monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States, or with foreign nations, shall be deemed guilty of a felony." 15 U.S.C.A § 2.

United States District Court

For the Northern District of California

United States District Court

For the Northern District of California

Relying on *Rebel Oil Co. v. Atlantic Richfield Co.*, 51 F.3d 1421, 1434 (9th Cir. 1995), Oldcastle contends that Jensen, in order to establish Oldcastle's monopoly power, must allege either that the market involves restricted output and supracompetitive prices or that Oldcastle has a dominant share of the market and that there are significant barriers to entry. Jensen has done so. Jensen alleges both that Oldcastle is now the sole provider of telephone vaults in the relevant market (dominant market share), and that competitors are prevented from entering the market as a result of AT&T's alleged edict (significant barriers to entry). SAC, ¶¶ 20-26; *see Rebel Oil*, 51 F.3d at 1439 (barriers to entry are "factors in the market that deter entry while permitting incumbent firms to earn monopoly returns").

Jensen also alleges that Oldcastle's acquisition of the purported monopoly was improper. For example, Jensen contends that Oldcastle acquired a monopoly concession from AT&T in order to charge developers "excessively high prices" for its vaults. SAC, ¶¶ 29, 65. Jensen also alleges that Oldcastle signed its direct sales agreement with AT&T "solely or principally" for the purpose of manipulating prices. SAC, ¶ 89. Thus, Jensen has sufficiently alleged a monopolization claim against Oldcastle.

Jensen's monopolization claim against AT&T fails, however, because Jensen does not sufficiently allege that AT&T acquired its monopoly power as a result of activities other than growth of a superior product or a historical accident. *See U.S. v. Grinnell Corp.*, 384 U.S. 563, 570-71 (1996). Jensen alleges only that AT&T's monopoly power over the telephone vault market is a necessary result of its control of the wireline network. SAC, ¶ 24. Jensen's Section 2 monopolization claim against AT&T is therefore dismissed with leave to amend.

> **b.    Claims 8 & 9 (Against Oldcastle only): "Misuse of Monopoly Power" & "Attempted Monopolization/Predatory Pricing/Market Leverage in a Related Market"**

The Court grants Oldcastle's motion to dismiss claim eight without leave to amend, but denies defendant's motion to dismiss claim nine. The allegations set forth under both claims are virtually identical. In essence, Jensen argues that Oldcastle is taking advantage of its monopoly power in the telephone vault market to gain an unfair advantage and a monopoly in the electrical vault market. SAC, ¶¶ 105, 111. Since claim nine specifically alleges an attempted monopoly cause of action, claim eight amounts to an independent claim of "monopoly leveraging" - i.e., the use of monopoly power in one

United States District Court

For the Northern District of California

market to gain a competitive advantage in a second market. *See Alaska Airlines, Inc. v. United Airlines, Inc.*, 948 F.2d 536, 546 (9th Cir. 1991). The Ninth Circuit has previously rejected "monopoly leveraging" as an independent theory of liability under Section 2. *See id.* Monopoly leveraging can only be pled as part of a monopolization or attempted monopolization claim. *See Alaska Airlines*, 948 F.2d at 546. Therefore, the Court dismisses Jensen's eighth claim without leave to amend.

However, the Court concludes that Jensen has pled facts sufficient to establish each element of an attempted monopolization claim against Oldcastle.[9] For this claim, Jensen defines the market as "that of selling electrical vaults to property developers in Northern California for installation alongside telephone vaults used to connect properties to the Wireline Network." SAC, ¶ 107. While this does appear to be a very narrow market definition, it nonetheless provides both a delineated product (electrical vaults) and a specific geographic area where competition is alleged to take place (property developers in Northern California who install electrical vaults alongside telephone vaults and who wish to connect to the AT&T wireline network). While Oldcastle may very well show that such a market is too narrow for Section 2 purposes, such a determination cannot be made on Jensen's pleadings alone.

Jensen satisfies element two of an attempted monopolization claim by asserting that Oldcastle is engaging in predatory pricing in the electrical vault market. SAC, ¶ 105; *see Brook Group Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 209-10 (1993). Jensen supports this allegation by contending that Oldcastle is charging "uneconomically low" prices. SAC, ¶ 105; *see Brook Group*, 509 U.S. at 210 (identifying below-cost pricing as an element of a predatory pricing claim). While Oldcastle argues that "uneconomically low" does not equate with "below-cost," Jensen's allegation does not rule out the possibility that it does.

Oldcastle further contends that Jensen has not properly alleged element three, a dangerous probability of success, because Jensen has not indicated that significant barriers to entry exist in the relevant market. *See nSight, Inc. v. Peoplesoft, Inc.*, 2005 WL 3299164 at *1 (N.D. Cal. Aug. 5, 2005)

---

[9]A Section 2 attempted monopolization claim consists of the following elements: (1) a specific intent to monopolize a relevant market; (2) predatory or anticompetitive conduct; (3) a dangerous probability of success; and (4) causal antitrust injury. *Paladin Assocs., Inc. v. Montana Power Co.*, 328 F.3d 1145, 1163 n.22 (9th Cir. 2003).

United States District Court

For the Northern District of California

(dismissing attempt-to-monopolize claim on the grounds that plaintiff failed to plead facts suggesting that there were barriers to entry into the market) (citing *Am. Prof'l Testing Serv., Inc. v. Harcourt Brace Jovanovich Legal and Prof'l Publ'ns, Inc.*, 108 F.3d 1147, 1154 (9th Cir.1997).  Jensen, however, does plead such facts.  Jensen alleges that property developers "invariably lay their electrical vaults alongside their telephone vaults" and that it is more convenient for a developer to choose the same supplier for both types of vaults.  SAC, ¶ 106.  Since Jensen also alleges that there is a significant barrier to entry - i.e., AT&T's new policies -  into the telephone vault market, it follows that a new electrical vault maker would have a very difficult time entering the relevant electrical vault market (at least as Jensen defines it).  *See Rebel Oil*, 51 F.3d at 1439 (barriers to entry are "factors in the market that deter entry while permitting incumbent firms to earn monopoly returns").

Finally, Jensen satisfies element four, causal antitrust injury, when it asserts that Oldcastle's predatory pricing policies in the electrical vault market are intended to "destroy" competition in the market so as to eventually "raise prices for its electrical vaults, and enjoy monopoly profits from these prices."  SAC, ¶ 105.  Jensen also alleges that it has been proximately harmed by this conduct.  SAC, ¶ 115.

### 5.      Sherman Act Sections 1 & 2 Claim:  Claim 15 - "Improper Retaliation"

The Court dismisses Jensen's fifteenth claim, entitled "Improper Retaliation," without leave to amend.  Jensen alleges that AT&T's decision to name Oldcastle as the sole authorized provider of telephone vaults in Nevada, among other actions, was an act of retaliation for Jensen's filing of this lawsuit.  While that may be true, it is unclear how such retaliation can be considered a separate antitrust action.  Plaintiffs cite no cases in which retaliation formed the basis of an antitrust case.  Jensen's allegations may provide indications of the defendants' intent (and therefore be important for its other antitrust claims), but they do not support an independent claim.   As the Supreme Court noted, "[e]ven an act of pure malice by one business competitor against another does not, without more, state a claim under the federal antitrust laws."  *Brooke Group Ltd.*, 509 U.S. at 225.

### 6.      Sherman Act Claim:  Claim 16 - Injunctive Relief

The Court finds that Jensen's sixteenth cause of action for Injunctive Relief under 15 U.S.C. § 26 is not subject to dismissal since at least some of its antitrust claims are properly alleged. *See* 15 U.S.C. § 26 ("Any person . . . shall be entitled to sue for and have injunctive relief . . . against threatened loss or damage by a violation of the antitrust laws").

**B.      State Antitrust Claims: Claim 10 (California Cartwright Act) & Claim 17 (Nevada Unfair Trade Practices Act)**

All parties agree that Jensen's California Cartwright Act claim and its Nevada Unfair Trade Practices Act claim are governed by the Court's decision on its federal antitrust claims. *See Cellular Plus, Inc. v. Superior Court*, 14 Cal. App. 4th 1224, 1240 (1993); *see also Boulware v. State of Nev., Dept. Of Human of Resources*, 960 F.2d 793, 800-01 (9th Cir. 1992). Therefore, given that at least some of Jensen's Sherman Act claims are not subject to dismissal, Jensen's tenth and seventeenth claims are not dismissed.

**C.      Other State Law Claims**

**1.      Claim 11:  Violations of CA Bus. & Prof. Code § 17200**

The Court finds that Jensen's claim under CA Bus. & Prof. Code § 17200 (the "UCL") should be dismissed without leave to amend. Although Jensen has adequately identified unfair business practices[10]- i.e., AT&T and Oldcastle's purported antitrust violations - and has alleged that it has been directly harmed by the defendants' actions, see SAC, ¶ 73, a UCL claimant cannot request disgorgement of illicitly-gained profits unless those funds were previously owned by the plaintiff. *See Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1145 (2003). Jensen alleges only damages – i.e., that it lost sales and profits in the relevant market -- not any facts that give rise to the remedies of restitution or disgorgement. Therefore, Jensen's eleventh claim under the UCL is dismissed without leave to amend.

**2.      Claim 12:  Tortious Interference with Contract**

_____

[10]The UCL defines "unfair competition" as "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by" section 17500.  CA Bus. & Prof. Code § 17200.

United States District Court

For the Northern District of California

United States District Court

For the Northern District of California

1    The Court concludes that plaintiff has sufficiently pled the elements of tortious interference with

2    contract.[11]   Jensen expressly alleges that a valid contract existed between itself and multiple property

3    developers.  SAC, ¶ 125.  Although Jensen does not specifically allege that AT&T or Oldcastle knew

4    of these contracts, such knowledge can be inferred from other allegations.  *See Quelimane Co. v. Stewart*

5    *Title Guaranty Co.*, 19 Cal. 4th 26, 56-57 (1998).  Jensen alleges that AT&T and Oldcastle conspired

6    to exclude competitors from the developer-installed vault market, implying that they knew of contracts

7    between developers and non-Oldcastle vault manufacturers.   These allegations also support the

8    implication that AT&T and Oldcastle knew that their actions would lead to disruption of those contracts.

9     *See id.* at 56.

10

11        **3.        Claim 13:  Tortious Interference with Prospective Business Advantage**

12        The Court concludes that Jensen has sufficiently alleged the elements of interference with

13   prospective economic advantage. This tort is almost identical to the interference with contract tort with

14   the exception that the plaintiff must show that the defendant committed an independently unlawful act.

15   *See Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1144, 1159 (2003).  Jensen satisfies this

16   additional requirement through its properly alleged antitrust claims.  Antitrust activity is "proscribed

17   by some constitutional, statutory, regulatory, common law or other determinable legal standard" and

18   therefore meets the definition of an independently wrongful act.  *See Korea Supply*, 29 Cal. 4th at 1159.

19

20                                   **CONCLUSION**

21        For the foregoing reasons and for good cause shown, the Court hereby GRANTS defendants'

22   motion in part and DENIES defendants' motion in part.  (Docket Nos. 32 and 37).  **Plaintiff must file**

23   **its amended complaint no later than September 20, 2006.**

24        The Court recognizes that there are significant factual disputes surrounding the operation of the

25   _____

26        [11]"The elements of a cause of action for intentional interference with contract are: (1) a valid
     contract between plaintiff and third party; (2) defendants' knowledge of this contract; (3) defendants'
27   intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual
     breach or disruption of the contractual relationship; and (5) resulting damage." *Pacific Gas & Electric,*
28   *Co. v. Bear Sterns & Co.*, 50 Cal.3d. 1118, 1126.

relevant product and geographic markets in this case, and that the early resolution of these disputes may expedite the proceedings in this case. Accordingly, counsel should address in their Case Management Conference statements, and be prepared to discuss at the October 20, 2006 Case Management Conference, avenues by which prompt resolution of these preliminary questions can be achieved.

**IT IS SO ORDERED.**

Dated: September 6, 2006

SUSAN ILLSTON
United States District Judge