**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

JENSEN ENTERPRISES INC.,

       Plaintiff,

  v.

AT&T INC., et al.,

       Defendants.

                 /

No. C 06-247 SI

**ORDER DENYING DEFENDANTS'
MOTIONS FOR SUMMARY JUDGMENT**

On June 8, 2007, the Court heard argument on defendants' motions for summary judgment. For the reasons set forth below, the Court DENIES the motions.

**BACKGROUND**

**I.    Telephone vault market**

Plaintiff Jensen Enterprises Inc. ("Jensen") manufactures and sells pre-cast concrete vaults that are used by telephone companies to connect newly constructed homes and businesses to the existing land-line telephone network. The vaults are underground rooms that contain telephone equipment and wiring and serve as modern replacements for traditional telephone poles. According to Jensen, these vaults are an "indispensable part of the modern-day telecommunications infrastructure." Fourth Amended Complaint ("FAC") ¶ 45. Defendant Oldcastle, Inc. ("Oldcastle") also manufactures the vaults and is a direct competitor of Jensen. Defendants Pacific Bell, Nevada Bell and SBC Services (collectively referred to as "AT&T")[1] are allegedly the sole providers of land-line telephone service in

_____

[1] As a result of various mergers, all three defendants are now affiliates of AT&T.

United States District Court
For the Northern District of California

1   most of California and Nevada.  FAC ¶ 11.  The parties largely agree that the market for telephone

2   vaults in California and Nevada works in the following way.  When a new property is constructed, the

3   vaults are purchased and installed either by the property developer or, on infrequent occasions, by

4   AT&T itself.  When a developer performs the installation, the developer is typically required to resell

5   the installed vault to AT&T before AT&T will provide land-line telephone service to the property.  As

6   a result of this requirement, AT&T is the ultimate purchaser of most telephone vaults sold in Nevada

7   and California.

8          For many years, Jensen sold vaults to AT&T in California and Nevada, primarily through

9   developers but also through direct sales.  In 2000, AT&T offered Jensen a new contract covering direct

10  sales in California.  Jensen alleges that the proposed contract contained "onerous, one-sided provisions"

11  that Jensen could not reasonably accept given prevailing market conditions.  In particular, the contract

12  purportedly required Jensen to offer blanket indemnities to AT&T, a 20 year warranty, and to make

13  direct sales to AT&T at unreasonably low prices.  Although Jensen rejected the offer, Oldcastle accepted

14  the contract in 2002.  The contract had a two year term from November 12, 2002 through November 14,

15  2004.  Scott Decl. ¶ 21.  The contract was amended in May 2005 extending the contract to December

16  31, 2006, and again in January 2006 to extend the contract to October 31, 2007.  *Id.* ¶ 9; Ex. 2-3.  The

17  amendments also affected pricing, as discussed below.

18         The parties agree that it was expected that under the contract AT&T would purchase most of the

19  vaults installed in its rights of way in California directly from Oldcastle, and not through contractors

20  or developers.  For reasons that are not entirely clear, this did not actually occur, and between 2002 and

21  2004, developers and contractors continued to purchase vaults from Oldcastle and its competitors, and

22  then resell those vaults to AT&T.  Defendants state that Oldcastle felt it was not receiving the benefit

23  of its contract with SBC in California, and in approximately mid-2003, Oldcastle started charging

24  contractors and developers the "market price" for vaults, and only honoring the contract price for direct

25  sales to SBC.  Scott Decl. ¶ 23.  Oldcastle complained to SBC about this state of affairs in 2003 and

26  2004.  *Id.* ¶ 19.

27

28

2

In July 2004, AT&T issued specifications to property developers and their contractors informing them that they must use Oldcastle vaults when connecting their property developments to AT&T's landline network (with a few limited exceptions).  Markham Decl. Ex. 7.  AT&T did not monitor the prices that Oldcastle charged developers, and it appears that between mid-2003 and at least August 1, 2005, Oldcastle charged developers higher prices than the AT&T reimbursement rate.  On January 18, 2006, AT&T and Oldcastle amended the contract that imposed uniform pricing for all AT&T vaults, with pricing given retroactive effect to August 1, 2005.  Markham Decl. Ex. 21.  Plaintiff alleges that during this time period, property developers paid millions of dollars in the price differential.  Plaintiff also asserts that when defendants finally imposed the "uniform pricing," the pricing for AT&T vaults under the contract rose by approximately 40%.

Jensen argues that the AT&T/Oldcastle contract was dependent on the exclusion of competitors like Jensen from selling AT&T vaults to affected property developers and contractors because (1) Oldcastle never would have accepted the arrangement, or committed itself to the low contract prices and expansive indemnifications and warranties, unless it became the exclusive supplier of vaults to property developers at uncontrolled prices; and (2) AT&T was able to pay low prices to property developers under CPUC tariffs because Rule 15 allows AT&T to "reimburse" property developers for AT&T vaults at the prices that would govern the sale of these vaults if made directly between AT&T and the supplier.

After this lawsuit was filed, AT&T implemented its Oldcastle-only policy in Nevada.

## II.   Electrical vault market

Jensen and Oldcastle also produce precast concrete vaults for electric utilities.  Jensen alleges that Oldcastle has been using the excess profits generated from its arrangement with AT & T in order to significantly lower its prices on electrical vaults in northern California.  FAC ¶ 64.  Because it is convenient for developers to choose the same supplier for both telephone and electric vaults, Oldcastle's alleged predatory pricing, combined with its purported monopoly of the telephone vault market,

3

1     allegedly threatens the market for electrical vaults.  *Id.* ¶¶ 108, 116.

2

3     **III.     This lawsuit**

4          In January 2006, Jensen initiated this lawsuit against Oldcastle and AT&T. In February 2007,

5     Jensen filed a fourth amended complaint which lists the following twelve causes of action against

6     defendants: (1) Section 1 of the Sherman Antitrust Act, Unreasonable Restraints of Trade; (2) Second

7     1 of the Sherman Act, Improper Refusal to Deal; (3) Section 2 of the Sherman Act, Monopolization

8     (against Oldcastle only); (4) Section 2 of the Sherman Act, Conspiracy to Monopolize; (5) Section 2 of

9     the Sherman Act, Attempted Monopolization (against Oldcastle only); (6) Section 26 of the Sherman

10    Act, Injunctive Relief; (7) California Cartwright Act; (8) Nevada Unfair Trade Practice Act; (9) tortious

11    interference with contracts; (10) tortious interference with prospective business opportunity; (11)

12    commercial defamation (against SBC); and (12) Section 14 of the Sherman Act, Improper Exclusive

13    Supplier Contract (against Oldcastle only).

14         Defendants have now moved for summary judgment.  Oldcastle moves for summary judgment

15    on all claims, while AT&T moves for summary judgment only on the four federal antitrust claims

16    alleged against AT&T.

17

18

19

20                              **LEGAL STANDARD**

21         Summary adjudication is proper when "the pleadings, depositions, answers to interrogatories,

22    and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any

23    material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P.

24    56(c).  In a motion for summary judgment, "[if] the moving party for summary judgment meets its initial

25    burden of identifying for the court those portions of the materials on file that it believes demonstrate the

26    absence of any genuine issues of material fact, the burden of production then shifts so that the non-

27

28                                    4

*United States District Court*
*For the Northern District of California*

moving party must set forth, by affidavit or as otherwise provided in Rule 56, specific facts showing that there is a genuine issue for trial." *See T.W. Elec. Service, Inc., v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)).

In judging evidence at the summary judgment stage, the Court does not make credibility determinations or weigh conflicting evidence, and draws all inferences in the light most favorable to the non-moving party. *See T.W. Electric*, 809 F.2d at 630-31 (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 (1986)); *Ting v. United States*, 927 F.2d 1504, 1509 (9th Cir. 1991). The evidence presented by the parties must be admissible. *See* Fed. R. Civ. P. 56(e). Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment. *See Thornhill Publ'g Co., Inc. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).

**DISCUSSION**

**I.     Market definitions**

Both defendants move for summary judgment on the ground that plaintiff's market definitions fail on the supply and demand sides. Jensen has defined the markets as follows:

> 1.     The California Market: The sale of AT&T vaults to property developers and their contractors for use in California.
>
> 2.     The Nevada Market: The sale of AT&T vaults to property developers and their contractors for use in Nevada.
>
> 3.     The Northern California Electrical Vault Market: The sale of electrical utility vaults to customers in the northern part of the California market – i.e., to property developers and contractors in Northern California who must anyway purchase AT&T vaults for their landline connections.

Pl's Opposition at 15. Plaintiff further defines "AT&T vaults" as precast concrete vaults made to AT&T specifications and used to connect property developments to AT&T's landline network. *Id*. at 17; *see also* Hall Decl.

Defendants argue that these market definitions are too narrow because they are limited on the supply side solely to telephone vaults and do not include the whole market of precast concrete vaults.

1    Defendants further argue that the definitions are too limited on the demand side because they are limited

2    to one buyer, AT&T.

3         "The relevant market is a factual inquiry for the jury, and the court may not weigh evidence or

4    judge witness credibility." *Rebel Oil Co., Inc. v. Atlantic Richfield Co.*, 51 F.3d 1421, 1435 (9th Cir.

5    1995) (internal citation and quotations omitted).  Summary judgment is appropriate, however, if

6    plaintiff's evidence cannot sustain a jury verdict on the issue of market definition.  *Id.*  "This rule does

7    not direct courts to resolve questions of credibility or conflicting inferences.  What it requires courts to

8    do is assess whether the jury, drawing all inferences in favor of the nonmoving party, could reasonably

9    render a verdict in favor of the nonmoving party in light of the substantive law."  *Id.*  In making this

10   determination, the Court applies the same standard that courts apply in motions for a directed verdict

11   or a judgment notwithstanding the verdict.  *Id.*

12        The Court finds that there are disputed issues of fact sufficient to defeat summary judgment on

13   the question of the proper market definitions.  As an initial matter, the Court notes that the Supreme

14   Court has rejected the argument that a single brand of product or service can never be a relevant market

15   under the Sherman Act.  *See Eastman Kodak Company v. Image Technical Services, Inc.*, 504 U.S. 451

16   (1992).  The Court stated:

17        Kodak also contends that, as a matter of law, a single brand of a product or service can
         never be a relevant market under the Sherman Act.  We disagree.  The relevant market
18        for antitrust purposes is determined by the choices available to Kodak equipment
         owners.  Because service and parts for Kodak equipment are not interchangeable with
19        other manufacturers' service and parts, the relevant market from the Kodak equipment
         owner's perspective is composed of only those companies that service Kodak machines.
20        This Court's prior cases support the proposition that in some instances one brand of a
         product can constitute a separate market.  The proper market definition in this case can
21        be determined only after a factual inquiry into the "commercial realities" faced by
         consumers.
22

23   *Id.* at 481-82 (internal citations omitted); *see also United States v. E.I. du Pont de Nemours & Co.*, 351

24   U.S. 371, 404 (1956) ("The market is composed of products that have reasonable interchangeability").

25        In support of its market definitions, plaintiff has submitted the declaration of Robert E. Hall, a

26   joint Professor of Economics and Senior Fellow at Stanford's Hoover Institution, and the declaration

27   of Jensen's president Anthony Llewelyn Shanks.  Both declarations address, *inter alia*, the question of

28                                                    6

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

1   whether there are reasonably close substitutes for the AT&T vaults.  Hall states,

2   > The defendants propose a definition of the relevant market that includes all reasonably
> close substitutes, on the demand and supply sides.  On the demand side, this definition
3   > includes the products currently available that meet the standards for telephone vaults.
> On the supply side, it includes the producers that are capable, over a moderate length of
4   > time such as a year, of supplying these products. . . .

5   > Here, the issue of antitrust economics is the price elevation caused by the limitation of
> developers' purchase options to a single seller, Oldcastle.  Determining the other sellers
6   > who actually or potentially sell reasonably close substitutes does not have its usual role
> in this case.  The usual role, as in a merger case, is to determine how effective are normal
7   > market forces in heading off an incipient price elevation.  If alternative sellers are
> available, customers will switch away from any seller that tries to elevate its prices.
8   > Here, though alternative sellers were available, including Jensen, they were precluded
> from playing the role that underlies the merger-style definition of a relevant market.

9

10   Hall Decl. ¶¶ 29, 32; *see also id.* at ¶¶ 27-34 (discussion of relevant markets).[2]  Jensen's president,

11   Shanks, describes the larger "market" for precast concrete products, and also specifically addresses

12   whether, and to what extent, other concrete products are "reasonably interchangeable" with the AT&T

13   vaults.  *See* Shanks Decl. ¶¶ 6-9, 17-27.[3]

14       The Court finds that plaintiff has submitted sufficient evidence to suggest both that precast

15   concrete product manufacturers cannot readily shift their production facilities to produce AT&T vaults,

16   and also that even if they could, it would not matter because those manufacturers are precluded from

17   selling to the developers.  The cases cited by defendants do not compel summary judgment because

18   there the courts found that the markets included multiple products that were reasonably interchangeable,

19   and that customers would be free to choose among those reasonably interchangeable products.  *See, e.g.*,

20   *Rebel Oil*, 51 F.3d at 1436 (holding Las Vegas gasoline retail market should include self-serve and full-

21   serve gasoline because "sellers of full-serve gasoline can easily convert their full-serve pumps, at

22   virtually no cost, into self-serve, cash-only pumps, expanding output and thus constraining any attempt

23   by ARCO to charge supracompetitive prices for self-serve gasoline"); *Blue Cross & Blue Shield United*

24

25       [2] Oldcastle objects that Mr. Hall did not have a sufficient factual basis for his opinions, and also
that he mischaracterizes the evidence.  The Court finds that defendant's objections go to the weight and
26   not the admissibility of Mr. Hall's declaration, and accordingly OVERRULES these objections.

27       [3] The Court also finds that Mr. Shanks has sufficiently laid a foundation for the factual
statements in his declaration regarding the precast concrete market.

28                                                 7

United States District Court
For the Northern District of California

*of Wisconsin v. Marshfield Clinic*, 63 F.3d 1406-11 (7th Cir. 1995) (HMOs are not a distinct market but part of larger health care provider market because "[t]he services offered by HMOs and by various fee-for-service plans are both provided by the same physicians, who can easily shift from one type of service to another if a change in relative prices makes one type more lucrative than others.").

There is also a factual dispute as to whether there is only one true purchaser of the AT&T vaults – AT&T – or whether the developers should be considered purchasers because they are (or were) not fully reimbursed by AT&T for the cost of the vaults. Drawing all reasonable inferences in support of plaintiff, as the Court must do on summary judgment, the Court finds that a reasonable jury could agree with plaintiff's market definitions.[4]

## II.    Antitrust injury

Defendants contend that plaintiff's antitrust claims fail because plaintiff has not sustained a direct, cognizable antitrust injury. Defendants argue that plaintiff is conflating the "injury" it suffered – as a "competitor" when it lost AT&T's business – with the alleged injury to contractors and developers as "customers" who were purportedly harmed when AT&T reimbursed them for vaults at rates lower than what they paid to Oldcastle. Defendants argue that plaintiff would have suffered its injury – lost profits because it could not sell vaults to contractors and developers for resale to AT&T – regardless of whether defendants engaged in any alleged scheme to reimburse developers at rates less than what the developers paid Oldcastle for the vaults.

Defendants rely on cases holding that a disappointed competitor who loses a contract to another bidder does not have antitrust standing because its injury is not the type of injury the antitrust laws were intended to address. However, those cases also hold that there is antitrust injury if there is harm to

---

[4]    Oldcastle also moves for summary judgment on the ground that Oldcastle does not have market power. Oldcastle argues that it does not have market power because there are no barriers to entry, and because Oldcastle's contract with AT&T did not confer market power. However, these arguments are intertwined with the parties' arguments about the proper market definitions, and whether AT&T's direction to developers that they could only purchase Oldcastle vaults constitutes a "barrier to entry." Because the proper market is disputed, and because the requirement to only purchase Oldcastle vaults could be considered a barrier to entry of that market, summary judgment is not appropriate.

competition and/or consumers.  *See, e.g., Ferguson v. Greater Pocatello Chamber of Commerce, Inc.*, 848 F.2d 976, 982 (9th Cir. 1988) (no injury where defendants put on evidence that competition not harmed and where plaintiff did not show that consumers were harmed).

The Court finds instructive *Glen Holly Entertainment, Inc. v. Tektronix, Inc.*, 352 F.3d 367 (9th Cir. 2003).  In *Glen Holly*, a purchaser/consumer plaintiff challenged a joint venture in which the defendants, who sold competing products, agreed to discontinue the product line that the plaintiff had purchased.  The Ninth Circuit held that the plaintiff had antitrust standing:

> The Avid/Tektronix agreement detrimentally changed the market make-up and limited consumers' choice to one source of output.  One form of antitrust injury is "[c]oercive activity that prevents its victims from making free choices between market alternatives."  *Amarel v. Connell*, 102 F.3d 1494, 1509 (9th Cir. 1996) (internal quotation marks and citation omitted).  The injury alleged flowed from the discontinuation of the only competing product on the market by agreement between the only two competitors in the market. Digital Images [the plaintiff] and its customers no longer had a viable choice between market alternatives.

*Id.* at 374.  Here, plaintiff contends that defendants changed the market make-up and limited developers' choice to one source of output – the Oldcastle-manufactured vaults.  Whether the *developers* were harmed by this arrangement is disputed[5]; however, plaintiff alleges that it (and other Oldcastle competitors) were harmed because they were not able to compete in this market.  Plaintiff also alleges that it has been harmed in the electric utility vault market because developers prefer to purchase the telephone and utility vaults from the same manufacturer – Oldcastle – rather than from separate manufacturers.  Plaintiff has submitted evidence showing that Jensen has lost millions in profits as a result. The Court finds that plaintiff has sufficiently identified a cognizable antitrust injury, and that there are disputed issues of fact as to whether plaintiff was, in fact, injured by defendants' conduct.[6]

---

[5] As discussed above, plaintiff states that it has been unable to get discovery on exactly how much AT&T reimbursed developers for the vaults, and the extent of the differential between the reimbursement rate and how much the developers paid Oldcastle for the vaults.  However, it is undisputed that between 2003 and 2005, Oldcastle charged developers the "market rate" for vaults, which was higher than the AT&T negotiated contract rate.  *See* Scott Decl.

[6] Oldcastle objects to much of plaintiff's evidence on the ground that "Jensen lacks standing to complain of alleged overcharges to developers on the prices they pay for telephone vaults."  However, because plaintiff does not directly challenge the alleged overcharges but instead challenges its exclusion from the market, the Court finds that Oldcastle's evidentiary objections in this regard lack merit.

United States District Court
For the Northern District of California

1    Accordingly, summary judgment is not appropriate.

2

3    **III.    Conspiracy claims**

4         Both defendants move for summary judgment on plaintiff's conspiracy claims. "[W]here an

5    antitrust plaintiff relies entirely upon circumstantial evidence of conspiracy, a defendant will be entitled

6    to summary judgment if it can be shown that (1) the defendant's conduct is consistent with other

7    plausible explanations, and (2) permitting an inference of conspiracy would pose a significant deterrent

8    to beneficial procompetitive behavior." *In re Coordinated Pretrial Proceedings in Petroleum Products*

9    *Antitrust Litigation*, 906 F.2d 432, 440 (9th Cir.1990). If the defendant succeeds in making such a

10   showing, "the plaintiff must come forward with other evidence that is sufficiently unambiguous and

11   tends to exclude the possibility that the defendant acted lawfully." *Id.*

12        Defendants contend that the AT&T/Oldcastle agreement – which plaintiff repeatedly asserts it

13   does not challenge – is legal and procompetitive, and that there is no evidence that defendants entered

14   into a conspiracy to overcharge developers or contractors. Defendants argue that even if AT&T had

15   reimbursed developers or contractors at a lower rate than they were charged by Oldcastle, plaintiff's

16   claims would fail because such "overcharges" were not mandated by any agreement between

17   defendants. Instead, defendants argue that the evidence is consistent with the following: (1) the parties

18   expected that after AT&T and Oldcastle signed the 2002 contract, AT&T would start purchasing all of

19   the telephone vaults, and thus that developers and contractors would no longer purchase vaults and then

20   resell them to AT&T; (2) that for whatever – unexplained – reason, this did not happen, and developers

21   and contractors continued to purchase the majority of the AT&T vaults; (3) the "AT&T rate" negotiated

22   in the AT&T/Oldcastle rate was below market (in the expectation that Oldcastle would be the sole

23   provider); (4) after the contract was signed, raw material prices went up; and (5) Oldcastle

24   independently started charging developers and contractors "market" prices for the AT&T vaults, and

25   AT&T was only reimbursing developers at the contract rate.

26        In response, plaintiff argues that the circumstantial evidence shows that defendants' actions

27

28                                                              10

allowed AT&T to purchase vaults at low prices, and allowed Oldcastle to sell vaults at high prices, with the captive developers obliged to bear the difference and the excluded sellers wrongly deprived of the change to compete and make a profit. Plaintiff argues that in addition to the circumstantial evidence of such an agreement, there is direct evidence of a conspiracy. Plaintiff principally relies on internal Oldcastle e-mail, in which Oldcastle management discuss their strategy for bidding on the AT&T contract in 2004:

> One other strategy for California could be to bid the contract low enough to guarantee winning. Since less than 10% of California's total SBC product sales, (5% in Southern California) are made directly to SBC and the balance sold directly to contractors at market prices, a low price for SBC direct sales would be rewarded, and has been, by sole provider status. It is unlikely that SBC will change this buying habit and they are legally unable to demand that we sell to contractors at the same price we sell to them.

Markham Decl. Ex. 1. Plaintiff argues that this email and others show that Oldcastle understood that it earned worthwhile profits by agreeing to AT&T's low prices in exchange for the right to sell to "captive property developers" at higher prices, and that it made 90-95% of its sales of AT&T vaults to property developers with profitable returns, and lost money only when making the 5-10% of these sales at a loss when selling directly to AT&T. *See also id*. at Ex. 2-3, 10-11. Plaintiff argues that the correspondence between AT&T and Oldcastle about this issue, the fact that the practice continued, and the fact that AT&T was concerned about legal difficulties that could arise from the situation, is all evidence tending to show a conspiracy. The Court finds that plaintiff has met its burden to defeat summary judgment on the conspiracy claims.

**VI.    State law claims**

Oldcastle moves for summary judgment on plaintiff's state law claims. Oldcastle concedes that state law claims rise and fall with the antitrust claims. For the reasons stated above, the Court DENIES summary judgment on these claims.

**V.    Oldcastle's evidentiary objections**

Oldcastle has submitted lengthy objections to much of plaintiff's evidence. Many of the

11

United States District Court
For the Northern District of California

objections take issue with plaintiff's antitrust theories; for the reasons stated *supra*, the Court finds these contentions lack merit. In addition, many of defendant's objections are not actually to the admissibility of the evidence, but rather to plaintiff's interpretation of that evidence. *See, e.g.*, Oldcastle's objections to numerous exhibits attached to the Markham Declaration. The parties are free to advance their competing interpretations of the evidence; those differing interpretations, however, are not a basis for excluding evidence. In addition, the Court finds that Messrs. Hall and Shanks have sufficiently set forth their qualifications and the basis for their testimony. Finally, as the Court did not rely on the property developers' and contractors' declarations in this order, the Court finds it unnecessary to address the parties' arguments regarding this evidence.

## CONCLUSION

For the foregoing reasons, the Court hereby DENIES defendants' motions for summary judgment (Docket Nos. 174 and 180), and DENIES as moot plaintiff's motion for a rule 56(f) continuance (Docket No. 199). The Court GRANTS defendant Oldcastle's request for judicial notice of sections of the tariffs filed by defendants Pacific Bell and Nevada Bell with the state public utility commissions. (Docket No. 177).

**IT IS SO ORDERED.**

Dated: July 6, 2007

SUSAN ILLSTON
United States District Judge

12

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
For the Northern District of California