United States District Court
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

JENSEN ENTERPRISES INC.,

                 Plaintiff,

   v.

OLDCASTLE PRECAST INC., *et al.*,

                 Defendants.

_____/

No. C 06-247 SI

**ORDER GRANTING DEFENDANTS'
MOTIONS FOR SUMMARY
JUDGMENT; DENYING ALL OTHER
MOTIONS AS MOOT**

Various motions are pending before the Court.[1]  For the reasons set out below, the Court concludes that plaintiff's federal and state antitrust claims fail because plaintiff cannot prove harm to competition in any market for vault sales, and because plaintiff cannot prove that it has suffered antitrust injury.  Plaintiff's common law tortious interference claims fail for the same reason, and plaintiff's common law commercial defamation claim against AT&T fails for lack of evidence.  Accordingly, the Court GRANTS defendants' motions for summary judgment and DENIES all other motions as moot.

**BACKGROUND**[2]

**1.**      **Telephone vault market**

Plaintiff Jensen Enterprises Inc. ("Jensen") manufactures and sells precast concrete vaults that are used by telephone companies to connect newly constructed homes and businesses to the existing

---

[1]  Presently pending are:  Plaintiff's motion to file fifth amended complaint (Docket No. 335); defendant Oldcastle's motion for summary judgment (Docket No. 346); defendant AT&T's motion for summary judgment (Docket No. 349); plaintiff's motion for partial summary judgment (Docket No. 355); and plaintiff's motion for adverse jury inference (Docket No. 358).

[2]  The Court notes that the parties dispute a number of facts in this case.  Because the Court is granting defendants' motions for summary judgment, the Court draws all factual inferences in favor of plaintiff.

land-line telephone network.  The vaults are underground rooms that contain telephone equipment and wiring and serve as modern replacements for traditional telephone poles.  According to Jensen, these vaults are an "indispensable part of the modern-day telecommunications infrastructure."  Fourth Amended Complaint ("FAC") ¶ 45.  Defendant Oldcastle, Inc. ("Oldcastle") also manufactures the vaults and is a direct competitor of Jensen.  Defendants Pacific Bell, Nevada Bell and SBC Services (collectively referred to as "AT&T")[3] are allegedly the sole providers of land-line telephone service in most of California and Nevada.  FAC ¶ 11.

The parties largely agree that the market for telephone vaults in California and Nevada works in the following way.  When a new property is constructed, the vaults are purchased and installed either by the property developer or, on infrequent occasions, by AT&T itself.  When a developer performs the installation, the developer is typically required to resell the installed vault to AT&T before AT&T will provide land-line telephone service to the property.  For many years, Jensen sold vaults to AT&T in California and Nevada, primarily through developers but also through direct sales.  In 2000, AT&T offered Jensen a new contract covering direct sales in California.  Jensen alleges that the proposed contract contained "onerous, one-sided provisions" that Jensen could not reasonably accept given prevailing market conditions.  In particular, the contract purportedly required Jensen to offer blanket indemnities to AT&T, a 20 year warranty, and to make direct sales to AT&T at unreasonably low prices. Although Jensen rejected the offer, Oldcastle accepted a contract on similar terms in 2002.  The contract had a two year term from November 12, 2002 through November 14, 2004.  The contract was amended in May 2005 extending the contract to December 31, 2006, and again in January 2006 to extend the contract to October 31, 2007.[4]  The amendments also affected pricing, as discussed below.

The parties agree that it was expected that under the Oldcastle-AT&T contract, AT&T would purchase most of the vaults installed in its rights of way in California directly from Oldcastle, and not through contractors or developers.  For reasons that are not entirely clear, this did not actually occur,

---

[3]  As a result of various mergers, all three defendants are now affiliates of AT&T.

[4]  On October 19, 2007, AT&T issued a new RFQ to replace the expiring 2006 contract.  Kozul Decl. ¶ 11.  Jensen did not bid for the business.  *Id.*  A new supplier, Teichert Construction, submitted a bid, as did Oldcastle.  *Id.*  On May 29, 2008, Teichert was awarded the contract for Northern California, and Oldcastle was awarded the contract for Southern California and Nevada.  *Id.*

and between 2002 and 2004, developers and contractors continued to purchase vaults from Oldcastle and its competitors, including Jensen, and then resell those vaults to AT&T.  Defendants state that Oldcastle felt it was not receiving the benefit of its contract with AT&T in California, and in approximately mid-2003, Oldcastle started charging contractors and developers the "market price" for vaults, and only honoring the contract price for direct sales to SBC.  Scott Decl. ¶ 24 (Docket No. 173). Oldcastle complained to SBC about this state of affairs in 2003 and 2004.

In July 2004, AT&T issued specifications to property developers and their contractors informing them that they must use Oldcastle vaults when connecting their property developments to AT&T's landline network (with a few limited exceptions).  AT&T did not monitor the prices that Oldcastle charged developers, and it appears that between mid-2003 and at least August 1, 2005, Oldcastle charged developers higher prices than the AT&T reimbursement rate.  On January 18, 2006, AT&T and Oldcastle amended the contract that imposed uniform pricing for all AT&T vaults, with pricing given retroactive effect to August 1, 2005.  After this lawsuit was filed, AT&T implemented its "Oldcastle-only" policy in Nevada.

Plaintiff claims that Oldcastle and AT&T conspired to exclude other sellers from the two relevant markets, which Jensen defines as "[t]he sale of telephone vaults to property developers and contractors for the purpose of connecting properties to the Wireline Network" in both California and Nevada.  FAC ¶ 23(1)-(2).  Plaintiff alleges that as a result of the Oldcastle-AT&T arrangement, Oldcastle gained a monopoly in selling vaults to the "captive" developers, and AT&T was able to justify its low reimbursement rates by reference to the low prices for direct sales contained in the Oldcastle-AT&T contract.  After extensive discovery and expert analysis discussed *infra*, the evidence shows that Oldcastle did not in fact charge developers supra-competitive prices for vaults.  The evidence is disputed regarding AT&T's reimbursement practices; Jensen contends that AT&T used the "Oldcastle price list" to set its reimbursement rates, while defendants contend that AT&T's reimbursement practices varied widely depending on region, that several regions use the Oldcastle contract prices in varying ways (e.g, reimbursing at Oldcastle contract prices plus 25% or using Oldcastle prices as a ceiling on reimbursement rates), and that in many regions the reimbursement rates have no connection to the Oldcastle contract prices.

3

**2. Electrical vault market**

Jensen and Oldcastle also produce precast concrete vaults for electric utilities. Jensen alleges that Oldcastle has been using the excess profits generated from its arrangement with AT&T in order to significantly lower its prices on electrical vaults in northern California. FAC ¶ 64. Because it is convenient for developers to choose the same supplier for both telephone and electric vaults, Oldcastle's alleged predatory pricing, combined with its purported monopoly of the telephone vault market, allegedly threatens the market for electrical vaults. *Id.* ¶¶ 108, 116.

**3. This lawsuit**

In January 2006, Jensen initiated this lawsuit against Oldcastle and AT&T. Several amended complaints followed, culminating in February 2007 with a fourth amended complaint which lists the following twelve causes of action against defendants: (1) Section 1 of the Sherman Antitrust Act, unreasonable restraints of trade; (2) Section 1 of the Sherman Act, improper refusal to deal; (3) Section 2 of the Sherman Act, monopolization (against Oldcastle only); (4) Section 2 of the Sherman Act, conspiracy to monopolize; (5) Section 2 of the Sherman Act, attempted monopolization (against Oldcastle only); (6) Section 26 of the Sherman Act, Injunctive Relief; (7) California Cartwright Act; (8) Nevada Unfair Trade Practice Act; (9) tortious interference with contracts; (10) tortious interference with prospective business opportunity; (11) commercial defamation (against SBC); and (12) Section 14 of the Sherman Act, improper exclusive supplier contract (against Oldcastle only).

In July 2007, the Court denied defendants' first motions for summary judgment. Those motions focused largely on the definition of the relevant markets, and discovery had been limited to that issue at the time those summary judgment motions were filed. In denying those motions, the Court held that there were disputed issues of fact sufficient to defeat summary judgment on the question of the proper market definitions. The Court also rejected defendants' arguments that Jensen was simply a disappointed competitor who lost a contract to another bidder, and therefore had not suffered antitrust injury. The Court noted that even in those circumstances, there can be antitrust injury if there is harm to competition and/or consumers. *See* July 6, 2007 Order at 8-9, citing *Ferguson v. Greater Pocatello Chamber of Commerce, Inc.*, 848 F.2d 976, 982 (9th Cir. 1988) (no injury where defendants put on

4

1    evidence that competition not harmed and where plaintiff did not show that consumers were harmed),

2    and *Glen Holly Entertainment, Inc. v. Tektronix, Inc.*, 352 F.3d 367, 374 (9th Cir. 2003) (plaintiff had

3    antitrust standing to challenge joint venture where "injury alleged flowed from the discontinuation of

4    the only competing product on the market by agreement between the only two competitors in the

5    market.").

6         Defendants contend that the complexion of this case has changed in critical respects since the

7    first round of summary judgment motions in July 2007.  The Court agrees.[5]  At that time, Jensen alleged

8    and argued that the Oldcastle-AT&T agreement had raised prices that developers paid in the alleged

9    market for AT&T vaults.  For example, Jensen alleged that "Oldcastle, armed with this monopoly

10   concession, forces the property developers to pay unreasonably high prices for the vaults – prices that

11   Oldcastle could not charge if Jensen and others were allowed to compete against it."  FAC at 3:5-7; *see*

12   *also id.* at ¶ 29 ("Oldcastle, as the only authorized seller, requires property developers to pay excessively

13   high prices for its vaults – prices it could never charge if it had to face competition from Jensen and

14   others."); *id.* at ¶ 30 ("In this manner, Oldcastle has enjoyed windfall profits from the prices it can

15   charge because it is the only seller . . . ."); *id.* at ¶ 31 ("property developers have been forced to pay

16   higher prices and receive lower reimbursements"); *id.* at ¶ 33 (Oldcastle "charge[s] higher prices that

17   would be uncompetitive if others could compete against it."); *id.* at ¶ 63 ("Since obtaining the monopoly

18   concession in the California Market, Oldcastle has charged developers comparatively higher prices for

19   its telephone vaults . . . .").

20        Similarly, in opposing defendants' first motions for summary judgment, plaintiff's expert stated,

21   "In situations where AT&T's requirement that developers purchase AT&T telephone vaults only from

22   Oldcastle was in effect, basic principles of economics show that Oldcastle would be able to charge

23   higher prices and make more sales than if developers could have shopped from two or more suppliers.

24   It is a premise of my analysis that Oldcastle received higher prices than it would have absent AT&T's

25

26        [5] Indeed, although plaintiff contends that this case has not changed, that assertion is undercut
     by plaintiff's desire to file a fifth amended complaint, which, *inter alia*, no longer alleges that Oldcastle
27   charged developers excessive prices for vaults, and instead alleges that developers were forced to pay
     higher "net" prices as a result of the Oldcastle-AT&T arrangement due to AT&T's low reimbursement
28   rates.

United States District Court
For the Northern District of California

requirement that developers purchase only from Oldcastle." May 18, 2007 Robert E. Hall Decl. ¶ 8.
Dr. Hall also stated that "[t]he exclusion of competing sellers from a market achieved by granting of
exclusivity to one seller is harmful to the excluded seller, in terms of lost profit, as well as to the buyers
who pay higher prices." *Id.* ¶ 13; *see also id.* at ¶ 23 ("The conduct described in the Complaint results
in a low price that is beneficial to the buyers, AT&T, but not costly to the winning seller, Oldcastle, who
benefitted from becoming the winner and having its exclusive arrangement enforced by AT&T, so it
enjoyed the high prices it could extract from developers thanks to the exclusive position AT&T granted
as part of the deal."). Jensen also argued that Oldcastle sold vaults to property developers at
"uncontrolled prices."[6]

Since the July 2007 summary judgment order, the parties have completed discovery. It is now
undisputed that Oldcastle did not charge developers supra-competitive prices for vaults. Jensen's
economic and antitrust expert, Dr. Hall, analyzed the prices charged by Oldcastle, Jensen, and other
suppliers, and concluded:

> Over the entire period 2002 through 2006, I find essentially no evidence that Oldcastle's prices for AT&T Vaults behaved differently from the other categories. They rose a bit less than Jensen's prices for AT&T vaults, exactly the same compared to Jensen's electric vaults, and a bit more than Oldcastle's electric vaults. Evidence for the intervening years is similar. I conclude that Oldcastle's AT&T Vault prices were not affected by the Oldcastle-only policy.

May 2, 2008 Hall Report ¶ 72. Mr. Hall confirmed this conclusion in his deposition. *See* Hall Depo.
at 184:5-11 ("Oldcastle unambiguously exercised its market power in the sense of gaining the extra
volume. The question of whether it exercised market power to raise prices, it appears that they did not
in a way that shows up in the statistical analysis that I did. Although they had the monopoly power, they
chose not to exercise it."). In light of the evidence showing that Oldcastle's prices did not increase as

---

[6] During the first round of summary judgment briefing, the parties did not present any specific evidence regarding how Oldcastle's prices to developers compared to a "competitive" price; instead, Jensen simply asserted that Oldcastle charged developers more than it charged AT&T for direct sales, and that property developers were held captive because they were forced to purchase vaults from Oldcastle and sell them at a loss to AT&T. Oldcastle's West Region President Michael Scott filed a declaration stating that for approximately six to nine months after the November 2002 execution of the Oldcastle-SBC contract, Oldcastle offered the contract price to anyone who ordered a vault meeting SBC specifications. Scott Decl. ¶ 22. (Docket No. 173). Mr. Scott stated that in approximately mid-2003, Oldcastle decided to honor the contract price only for direct sales to SBC, and to "charge market price for sales to contractors." *Id.* at ¶ 24.

6

a result of the Oldcastle-AT&T contract, plaintiff's theory of antitrust violation and injury has slightly shifted. Jensen now contends that the "net" price that developers paid for vaults increased as a result of the Oldcastle-AT&T contract because AT&T used the Oldcastle "price list" as the basis for its low reimbursements. Under this theory, "[t]he antitrust harm from the challenged conduct arises entirely from the under-reimbursement of developers. Had AT&T fully reimbursed developers – as would have occurred under conduct that avoided the antitrust harm – the Oldcastle-only policy would not have had an anticompetitive effect." May 2, 2008 Hall Report ¶ 32.

Now before the Court are defendants' second motions for summary judgment, plaintiff's motion for partial summary judgment, plaintiff's motion for a jury instruction authorizing an adverse inference, and plaintiff's motion for leave to file a fifth amended complaint. Defendants contend, *inter alia*, that Jensen's antitrust claims fail because there was no harm to competition in the alleged vault market, and that Jensen cannot prove that it has suffered antitrust injury.

**LEGAL STANDARD**

Summary adjudication is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In a motion for summary judgment, "[if] the moving party for summary judgment meets its initial burden of identifying for the court those portions of the materials on file that it believes demonstrate the absence of any genuine issues of material fact, the burden of production then shifts so that the non-moving party must set forth, by affidavit or as otherwise provided in Rule 56, specific facts showing that there is a genuine issue for trial." *See T.W. Elec. Service, Inc., v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)).

In judging evidence at the summary judgment stage, the Court does not make credibility determinations or weigh conflicting evidence, and draws all inferences in the light most favorable to the non-moving party. *See T.W. Electric*, 809 F.2d at 630-31 (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 (1986)); *Ting v. United States*, 927 F.2d 1504, 1509 (9th Cir. 1991). The evidence presented by the parties must be admissible. *See* Fed. R. Civ. P. 56(e). Conclusory,

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment. *See Thornhill Publ'g Co., Inc. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).

## DISCUSSION

## 1. Antitrust claims

Defendants contend that plaintiff's federal and state[7] antitrust claims fail because the evidence now shows that Oldcastle did not charge developers supra-competitive prices for vaults, and instead the alleged injury flows solely from AT&T's reimbursement practices. Oldcastle argues that there is no evidence showing that Oldcastle participated in setting any of AT&T's reimbursement practices, and that to the contrary, AT&T unilaterally sets its own reimbursement rates. AT&T defends its reimbursement practices as a lawful exercise of its market power as a natural monopolist. In addition, AT&T argues that even if AT&T has a regulatory obligation to reimburse developers for their costs, and even if AT&T's agreement with Oldcastle somehow assisted AT&T in evading that regulatory obligation, these facts do not amount to an antitrust claim.

AT&T contends that *NYNEX Corporation v. Discon, Incorporation*, 525 U.S. 128 (1998), is dispositive. In *Discon*, a regulated local telephone company with alleged monopoly power switched its purchases of "removal services"[8] from the plaintiff, Discon, to Discon's competitor, AT&T Technologies, "as part of an attempt to defraud local telephone service customers by hoodwinking regulators." *Id.* at 132. Under the alleged scheme, the local telephone company paid AT&T Technologies more than Discon would have charged for similar removal services: "It did so because it could pass the higher prices on to New York Telephone, which in turn could pass those prices on to telephone consumers in the form of higher regulatory-agency-approved telephone service charges. At

---

[7] The requirements for maintaining an antitrust suit under California and Nevada law mirror the federal requirements. *See Kentmaster Mfg. Co. v. Jarvis Prods. Corp.*, 146 F.3d 691, 695 (9th Cir.1998), as amended 164 F.3d 1243 (9th Cir. 1999); Nev. Rev. Stat. § 598A.050 (provisions of Nevada Unfair Trade Practice Act shall be "construed in harmony with prevailing interpretations of the federal antitrust statutes.").

[8] "Removal services" is the business of removing and disposing of old telephone switching equipment. *Id.* at 131.

1   the end of the year, [the telephone company] would receive a special rebate from AT&T Technologies

2   . . . ." *Id*. Discon alleged that it refused to participate in this fraudulent scheme, with the result that the

3   telephone company would not purchase from Discon, forcing Discon out of business. *Id*.

4           The Supreme Court held that these allegations did not state a claim for *per se* illegality under

5   Section 1 of the Sherman Act, nor did they support a claim for conspiracy to monopolize the market for

6   removal services.  The Court analyzed whether "an antitrust court considering an agreement by a buyer

7   to purchase goods or services from one supplier rather than another should (after examining the buyer's

8   reasons or justifications) apply the *per se* rule if it finds no legitimate business reason for that purchasing

9   decision." *Id*. at 135.  The Court concluded that no *per se* rule applied, and that the plaintiff must allege

10  and prove harm, not just to a single competitor, but to competition itself. *Id*.  With regard to the specific

11  alleged fraudulent scheme, the Court stated,

> We concede Discon's claim that the petitioners' behavior hurt consumers by raising
> telephone rates.  But that consumer injury naturally flowed not so much from a less
> competitive market for removal services, as from the exercise of market power that is
> *lawfully* in the hands of a monopolist, namely, New York Telephone, combined with a
> deception worked upon the regulatory agency that prevented the agency from controlling
> New York Telephone's exercise of its monopoly power.
>
> To apply the *per se* rule here – where the buyer's decision, though not made for
> competitive reasons, composes part of a regulatory fraud – transform cases involving
> business behavior that is improper for various reasons, say, cases involving nepotism or
> personal pique, into treble-damages antitrust cases.

18  *Id*. at 136-37 (emphasis in original).  On remand, the district court dismissed Discon's companion rule-

19  of-reason antitrust claim.  The court analyzed Discon's allegations that the alleged conspiracy caused

20  anticompetitive harm in the form of consumer injury through alleged overcharging of captive ratepayers.

21  *Discon Inc. v. NYNEX Corp.*, 86 F. Supp. 2d 154, 163 (W.D.N.Y. 2000).  Citing the Supreme Court's

22  decision, the district court held that "regulatory misconduct – even if it results in inappropriately high

23  charges to telephone customers – is not equivalent to a violation of the Sherman Act.  Both may harm

24  consumers, but the appropriate legal claims and remedies arise from different bodies of law." *Id*. at 164.

25  The district court further noted that "any such harm occurred in a market – the *telephone* services (not

26  removal services) market – which is not even at issue in this case." *Id*. at 164 n.9 (emphasis in original).

27          Plaintiff argues that *Discon* is distinguishable because here competition has been "destroyed"

28  in the relevant market of sales of vaults, while in *Discon* there was no discernible harm to competition

9

United States District Court
For the Northern District of California

1   for any good or service.  However, like Jensen, the *Discon* plaintiff alleged that competition had been

2   harmed because it could no longer sell its goods or services in the non-regulated market for removal

3   services.[9]  As the Supreme Court held, there must be injury to competition, not just to a competitor, to

4   state a claim for antitrust injury.  *See Discon*, 525 U.S. at 135; *Brown Shoe Co. v. United States*, 370

5   U.S. 294, 344 (1962); *see also Cargill, Inc. v. Montfort of Colorado*, 479 U.S. 104, 116 (1986) ("The

6   kind of competition that [plaintiff] alleges here, competition for increased market share, is not activity

7   forbidden by the antitrust laws.").

8          "[T]he antitrust laws are only concerned with acts that harm allocative efficiency and raise the

9   price of goods above their competitive level or diminish their quality." *Pool Water Prods. v. Olin Corp.*,

10  258 F.3d 1024, 1034 (9th Cir. 2001) (internal citation and quotation omitted); *see also Nelson v. Monroe*

11  *Reg'l Med. Ctr.*, 925 F.2d 1555, 1564 (7th Cir. 1991) (Antitrust injury "means injury from higher prices

12  or lower output, the principal vices proscribed by the antitrust laws.").  Jensen concedes that Oldcastle

13  did not charge developers supra-competitive prices for vaults.  However, Jensen argues that there is

14  antitrust injury because "net" prices for vaults increased due to the low reimbursement rates.  Jensen

15  does not cite any authority for the proposition that the failure to receive full or reasonable

16  reimbursement for a product is treated as an elevation of the price of the product for antitrust purposes.

17         The Court concludes that under *Discon*, Jensen's antitrust claims fail.  The evidence is

18  undisputed that Oldcastle did not charge supra-competitive prices for vaults in the only markets alleged

19  in the complaint:  *the sale of telephone vaults to property developers and contractors* for the purpose

20  of connecting properties to the Wireline Network in both California and Nevada.[10]  Instead, as in

21  *Discon*, the alleged injury occurs entirely as a result of a different transaction involving alleged

22

23         [9] On remand, the district court held that Discon's alleged relevant market – telephone equipment
    removal services for NYNEX – was too narrow, and that the proper relevant market was the total
24  demand for telephone equipment removal services. *Discon*, 86 F. Supp. 2d at 160-61.  Jensen similarly
    alleges a narrow antitrust market consisting of the sale of telephone vaults to property developers and
25  contractors for the purpose of connecting properties to AT&T's wireline network.  The Court need not
    resolve the question of the proper antitrust market because even assuming that Jensen's definition is
26  correct, under *Discon* there is no antitrust violation.

27         [10] Jensen does assert that Oldcastle imposed unreasonable indemnity requirements and delivery
    costs (in Nevada only) on the developers.  However, neither Jensen nor Dr. Hall argues that the
28  indemnity requirements and delivery costs are evidence of supra-competitive prices.

United States District Court
For the Northern District of California

regulatory misconduct. While AT&T may have violated a regulatory obligation to reasonably reimburse developers and contractors for the cost of the vaults – a question that the Court need not resolve – such a regulatory violation is not tantamount to an antitrust violation. *See Discon*, 525 U.S. at 136-37.

Relatedly, the Court concludes that Jensen's antitrust claims fail because Jensen cannot prove that it suffered any antitrust injury. "To show antitrust injury, a plaintiff must prove that his loss flows from an anticompetitive aspect or effect of the defendant's behavior, since it is inimical to the antitrust laws to award damages for losses stemming from acts that do not hurt competition. If the injury flows from aspects of the defendant's conduct that are beneficial or neutral to competition, there is no antitrust injury, even if the defendant's conduct is illegal per se." *Rebel Oil Co. v. ARCO*, 51 F.3d 1421, 1433 (9th Cir. 1995) ("*Rebel I*") (internal citation omitted) (emphasis added). Jensen does not contend that its exclusion from the vault market as a result of the Oldcastle-AT&T contract is unlawful in itself. *See* May 2, 2008 Hall Report ¶ 32 ("Had AT&T fully reimbursed developers . . . the Oldcastle-only policy would not have had an anticompetitive effect."). If AT&T had designated Oldcastle as its exclusive supplier while fully reimbursing developers and contractors – an arrangement that Jensen says would have been legal and without antitrust implications – Jensen still would have suffered the same harm (lost profits) due to its legal exclusion from the market. *See Lucas Auto. Eng'g, Inc. v. Bridgestone/Firestone, Inc.*, 140 F.3d 1228, 1233 (9th Cir. 1998) (no antitrust standing where "As a competitor of Coker Tire, Lucas Automotive's alleged injury is that it has been foreclosed from serving as a primary-line supplier of vintage tires. However, Lucas Automotive would have suffered the same injury had a small business acquired the exclusive right to manufacture and distribute Firestone Tires.").

The Court GRANTS defendant's motion for summary judgment on the federal and state antitrust claims.

## 2. Common law claims

### A. Tortious interference

The ninth claim for relief alleges tortious interference with contracts, and the tenth claim for relief alleges tortious interference with prospective interference with prospective economic advantage. The fourth amended complaint alleges that through the "exclusive vendor/reimbursement policy"

United States District Court
For the Northern District of California

1  defendants have disrupted, impaired, interfered with, and caused the breach of contracts made between

2  Jensen and various property developers and their contractors.  FAC ¶ 123.

3       The elements of a claim for tortious interference with contract are (1) the existence of a valid

4  contract with a third party; (2) defendants' knowledge of that contract; (3) intentional acts by defendants

5  designed to induce a breach of the contract; (4) actual breach; and (5) resulting damages.  *See Sole*

6  *Energy Co. v. Petrominerals Corp.*, 128 Cal. App. 4th 212, 237-38 (2005).  To maintain a claims for

7  tortious interference with prospective economic advantage, Jensen must similarly show the existence

8  of "an economic relationship between it and a third party that carries a probability of future economic

9  benefit to the plaintiff, defendant's knowledge of the relationship, intentional acts by the defendant to

10  disrupt the relationship, actual disruption of the relationship, and economic harm to the plaintiff."

11  *Stevenson Real Estate Servs., Inc. v. CB Richard Ellis Real Estate Servs., Inc.*, 138 Cal. App. 4th 1215,

12  1220 (2006).  In addition, Jensen must show that defendants' conduct was "wrongful by some measure

13  beyond the fact of the interference itself, [that the conduct] is proscribed by some constitutional

14  statutory, regulatory, common law, or other determinable legal standard."  *Id.*

15       Both defendants argue  that Jensen's claims fail because Jensen has not identified any contract

16  of which defendants had knowledge or with which defendants intended to interfere, and because Jensen

17  has not demonstrated any tortious or wrongful conduct.  Jensen's opposition simply asserts that since

18  Jensen can maintain its antitrust claims, it can also maintain the tortious interference claims.  *See*

19  Plaintiff's Opposition at 50.[11]

20       The Court agrees with plaintiff that, under the facts of this case, plaintiff's tortious interference

21  claims depend on its antitrust claims.  Since the Court has determined that plaintiff cannot establish

22  antitrust violation or antitrust injury, plaintiff has not established the tortious or wrongful conduct

23  essential to a tortious interference claim.  The Court GRANTS defendant's motion for summary

24  judgment on the tortious interference claims.

25

26

27

28
       [11]  Plaintiff's opposition reads, in its entirety: "Since Jensen can maintain its federal antitrust
   claims, it can likewise maintain its state antitrust claims and claims for tortious interference."

12

United States District Court
For the Northern District of California

**B.      Commercial defamation against AT&T**

The eleventh claim for relief is for commercial defamation against AT&T.  Commercial defamation is "publication of matter disparaging the quality of another's property, which the publisher should recognize is likely to cause pecuniary loss to the owner, which the publisher should recognize is likely to cause pecuniary loss to the owner."  *Franklin v. Dynamic Details, Inc.*, 116 Cal. App. 4th 375, 385 (2004).  "The *sine qua non* of recovery for defamation . . . is the existence of falsehood."  *Id.*

Jensen argues that AT&T falsely told many of Jensen's customers that its vaults could not be used in AT&T's system because Jensen refused to sign a contract with AT&T and also because Jensen failed to provide sufficient warranties for its products.  Jensen argues that these statements were false because the true reason AT&T would not let these customers use Jensen's vaults was its unwritten agreement with Oldcastle to exclude Oldcastle's rivals from selling vaults to the developers and contractors.  In support, Jensen cites the deposition testimony of James Alexander, a Jensen employee, in which Alexander states that *he* told "Stan" of Northwest Excavating that "[w]e could no longer sell to them because we wouldn't sign the contract."  Alexander Depo. at 33:19-22; *see id.* at 64-65.  This deposition testimony does not support Jensen's claim that *AT&T* commercially defamed Jensen.  In fact, this testimony directly undercuts Jensen's claim because the alleged falsehood – that Jensen could not sell to developers because it would not sign the contract – is one that a *Jensen* employee made.  Jensen also cites the deposition testimony of Jeffrey Friedman, another Jensen employee, who stated that "[s]omewhere in 2004, then contractors started telling us, because of the document that we had refused to sign on the direct purchase agreement in 2002, that that was now preventing them from buying from us in 2004."  Friedman Depo. at 137:7-11.  This deposition testimony also does not support Jensen's commercial defamation claim because it does not identify any specific statement *by AT&T*.

Accordingly, the Court finds that plaintiff has not met its burden to withstand summary judgment, and GRANTS defendant's motion for summary judgment on the commercial defamation claim.

**CONCLUSION**

For these reasons, the Court GRANTS defendants' motions for summary judgment.  The Court

DENIES as moot all other pending motions. (Docket Nos. 355, 346, 349, 355, 358). The Court does not rule on defendants' evidentiary objections because even assuming that the evidence at issue is admissible, the Court would reach the same result.

**IT IS SO ORDERED.**

Dated: February 23, 2009

_____
SUSAN ILLSTON
United States District Judge